[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a statutory appeal concerning unemployment compensation. The Employment Security Board of Review has certified the record of this appeal to the court.
The record certified to this court reveals the following: The Administrator, Unemployment Compensation Act granted the claimant's application for benefits. The employer, Department of Public Safety, State of Connecticut, appealed the decision of the Administrator. The referee conducted a hearing CT Page 5865 de novo, made findings of fact and affirmed the decision of the Administrator. The employer appealed that decision to the Employment Security Board of Review (hereinafter "Board"). Without further evidentiary hearings, the Board modified the findings of the referee and reversed his decision.
The claimant filed a motion to reopen the Board's decision. The Board denied that motion. The claimant appealed the decision of the Board to this the Superior Court. The claimant filed with the Board a motion to correct the Board's findings. The Board granted that motion in part and denied it in part.
On September 20, 1988, the appeals referee rendered his decision pointing out, at the outset, that "Sec. 31-236
(a)(2)(A) of the Connecticut Compensation Law provides that an individual shall be ineligible for benefits if it is found that he has left suitable work voluntarily and without sufficient cause connected with his work. . . provided no individual shall be ineligible for benefits if he leaves suitable work for sufficient cause connected with his work, including leaving as a result of changes in conditions created by his employer." The referee also noted that "it is clear from the medical documentation and from the testimony that the claimant (plaintiff) was having `anxiety attacks' and was nervous and felt stressed because of her employment." The referee concluded that "it is clear that (the office supervisor) caused or contributed to the claimant's `anxiety attacks' (and) that the claimant felt she could no longer continue in her employment and there was no suitable transfers available and "[S]ince the employment was having a detrimental affect on the plaintiff's health, as per medical statements, she had sufficient cause for leaving." The referee concluded that the work was not suitable for the plaintiff and that she left work with sufficient cause. He determined that the Administrator's awarding of benefits to the claimant was affirmed and the employer's appeal dismissed.
The employer appealed the referee's decision to the Board of Review on October 17, 1988.
Acting under authority contained in Section 31-249
Conn. Gen. Stat., the Board reviewed the record in this appeal, including the tape recording of the referee's hearing. The Board noted, inter alia, that the certain
 medical statements which had been submitted by the claimant indicated a variety of routine medical and dental ailments or failed to document the reason for absences, and there was no indication that the claimant's former absences were due to CT Page 5866 stress, nervousness or anxiety.
The Board also noted that
 [A]t one point the claimant was moved from her position at the front desk, where her responsibilities included answering the telephone to a desk toward the side near her immediate supervisor.
The Board also noted
 [T]he immediate supervisor and office supervisor felt that the claimant's performance might be suffering as a result of the noise and confusion at the front desk and believed it would help the claimant's production to assign her to a quieter area.
In support of its appeal, the employer, contends it had no knowledge of the complainant's medical condition because the only documents submitted by the claimant listed routine medical conditions or no reason at all for her absences. The employer maintains that if it were aware of the claimant's medical problem, it would have attempted to assist her.
The Board, in setting forth the principal involved, stated that an individual will not be disqualified from the receipt of benefits if she leaves work that is unsuitable because it is harmful or potentially harmful to the individuals health (citing31-236[a][i]) and stated, "[t]here is generally a requirement in voluntary leaving cases that a claimant exhaust reasonable alternatives to preserve the employment by expressing dissatisfaction with the working conditions and seeking a remedy through reasonably available means." (Citing Sec. 31-236-22b.)
The Board discussed the above stated rule as follows:
 "When a claimant leaves because work has become unsuitable due to a health condition, she has satisfied the burden of exploring alternatives by advising the employer of the nature of the health condition and the need to leave the job." (Citing Sinnamon v. Mental Health Commission, Board Case No. 562-BR-88 (11/10/88).
This rule, the Board continued,
"reflects a recognition that a claimant CT Page 5867 incapacitated from performing her work is frequently unable to rationally analyze her employment situation or to know what alternatives are realistic. Requiring the individual to communicate the need to leave the employment for health reasons shifts the burden to the employer, who has knowledge of the availability of other work and the capability of the claimant to perform other work. In the case before us, the claimant never advised the employer of the nature of her illness and the employer had no way of knowing the source of the claimant's frequent absences from the medical documentation provided.
The Board then said
 "We conclude that the claimant has not satisfied the exploration of alternatives requirement and is disqualified from the receipt of benefits unless it can be shown that notifying the employer of her medical condition would have been futile." See Auger v. Administrator, 19 Conn. Sup. 184, 187 (1954).
In its conclusion the Board said
 Since the claimant did not advise the employer of the nature of her health condition and the need to leave her employment and since it is not at all clear that it would have been futile to so advise the employer, we conclude that the claimant did not adequately explore alternatives to voluntarily leaving her employment.
 The decision of the Referee is, therefore, reversed and the employer's appeal is sustained. In so ruling, the Board adopts the Referee's findings of fact as modified above."
In response to the Board's decision the claimant moved to reopen, vacate, set aside and/or modify that determination. In that motion the claimant, inter alia, claimed
 To require medical documentation for symptoms which Ms. Velez admitted were obvious to her and Ms. Murphy is to require the unnecessary. CT Page 5868 The desk move was clearly related to a period of illness. While Ms. Velez could not accept the fact that she was the source of Claimant's stress, she nevertheless admitted that she observed that Claimant was suffering from stress. Since the Employer then knew of Claimant's stress and took no suitable action as a result thereof, notifying the Employer of the medical condition about which it already knew from personal observation would have been futile. Auger v. Adm'r., 19 Conn. Sup. 184, 187 (1954); Sinnamon v. Mental Health Comm'n, Board Case No. 562-BR-88 (11/1088). In any event, the record establishes that Claimant was, at the time of her resignation, incapable of rationally identifying and pursuing reasonable alternatives. Slinger v. Equitable Life Assurance Soc'y, 952-85-BR (8/15/85); Cooper v. Cedarcrest Hospital, State of Connecticut, 916-86-BR (2/19/87); Livolsi v. Caldor, Inc., 673-87-BR (7/21/87).
In addition to the claimant's contention that the record does not support the Board's findings that the employer was unaware of the nature of the claimant's illness she further maintained that the employer's actions in having two uniformed police officers hand deliver a certain April 25 letter was a flagrant invasion of the claimant's privacy and alone afforded her sufficient cause for leaving. In its Decision on the Claimants Motion to Correct Findings the Board responded to that claim as follows:
 "The Board expressed shock at the employer's behavior and recognized that the claimant was understandably upset at having two uniformed police officers deliver a letter to her home. However, the claimant testified that she would have resigned even if she did not receive the letter and that the letter was only the `last straw', and not the motive for her leaving."
An understanding here of the statutory scheme, at the administrative, level is crucial. The court's role is limited. A complete discussion of this subject is found in a Superior Court Memorandum of Decision in No. 312592 Middlesex Memorial Hospital v. Administrator, Employment Security Division et al, Judicial District of Hartford/New Britain at Hartford, June 27, CT Page 5869 1986, (Satter, J.), in its entirety herein set forth as follows:
 In this appeal plaintiff, Middlesex Memorial Hospital, seeks to have this court overturn a decision of the Employment Security Board of Review (hereinafter Board of Review), determining that claimant, Joanne Johanns, was not discharged for repeated willful misconduct and thus was entitled to unemployment compensation. Defendant, Administrator, moves for judgment dismissing the appeal on its; merits.
 The facts are as follows: claimant, having been discharged by plaintiff, applied for unemployment compensation benefits from the Administrator, Employment Security Division. An examiner ruled her ineligible and she appealed to an appeals referee pursuant to sec. 31-241 of General Statutes. The referee heard testimony of several witnesses on behalf of the claimant and plaintiff. His findings of fact included an incident on November 7, 1984 when claimant started her morning rounds as EKG technician 22 minutes late and an incident on November 8, 1984 when a supervisor questioned claimant about her tardiness the previous morning. On that occasion, claimant responded in `loud and argumentative tones' and continued yelling and arguing in the director's office. The referee concluded that `the claimant repeatedly failed to perform her duties properly and otherwise conducted herself in a manner which was contrary to the employer's best interests, despite repeated warnings and counselling that her behavior was not acceptable. Accordingly her discharge was one which disqualified her for benefits under . . . statute.' He was referring to sec. 31-236 (2)(b), which provides `an individual shall be ineligible for unemployment benefits if . . . he has left suitable work voluntarily and without suitable cause connected with his work.'
 Claimant appealed to the Board of Review. That Board interpreted the referee's decision as a ruling that claimant was properly discharged for repeated willful misconduct in the course of her employment and, therefore, was disqualified from unemployment benefits under sec. 31-236 (2)(B). The Board reviewed the record, including the tape of the referee's hearing, and concluded that claimant's conduct on November 8, 1984 constituted `willful misconduct,' which it interpreted to mean `conduct which shows a CT Page 5870 wanton or willful disregard of the employer's interests or of the standards of behavior which the employer has a right to expect of his employee. Duperry v. Administrator, Unemployment Compensation Act, et al., 25 Conn. Sup. 409.' However, the Board remanded the case to the appeals referee to determine whether claimant's conduct on November 7, 1984, when she was 22 minutes late, was without good cause.
 "The appeals referee found that claimant's `failure to start work promptly at 7:00 a.m. was not the result of any good cause. It is further noted that the claimant had been issued numerous prior warnings for this very offense. It is therefore concluded that she did willfully neglect her job duties on the morning of November 7, 1984 and that her actions on that morning constitutes willful misconduct in the course of her employment.' Thus, he concluded that her actions on both November 7 and 8 constituted repeated willful misconduct which disqualified her for unemployment benefits.
 On appeal, the Board of Review considered all the facts found by the appeals referee as to claimant's actions between 7:00 and 7:22 in the morning of November 7. It concluded, `we cannot concur with his [the referee's] assessment of the record thus created We specifically disagree with the referee's determination that the claimant has been loafing or loitering or otherwise neglecting her job duties in the course of her employment during the period in issue.'
 The Board noted that no witnesses testified from first-hand observation that the claimant engaged in anything but normal work activities or that she neglected her job duties. It concluded that claimant's conduct during the crucial 22 minutes on November 7 did not amount to willful misconduct nor did the record establish `any other prior acts of willful misconduct in the course of her employment which would justify a conclusion that this claimant was discharged for repeated willful misconduct in the course of her employment.'
 Plaintiff does not claim that the Board of Review improperly construed `repeated willful misconduct' as that phrase is used in sec. 31-326 (2)(B). Rather it asserts that (1) the Board came to the wrong factual conclusions based on the evidence, and (2) the Board acted arbitrarily, unreasonably and in CT Page 5871 abuse of its discretion in substituting its judgment for that of the appeals referee. Plaintiff claims that the Board ignored certain evidence, gave improper weight to other evidence, and came to wrong factual conclusions. However, this court does not adjudicate questions of fact, nor may it substitute its own conclusions for those of the Board. Cervantes v. Administrator, 177 Conn. 132, 134
(1979); Guevara v. Administrator, 172 Conn. 492, 495
(1977); Johnson v. Administrator, 3 Conn. App. 264, 267 (1985).
 Moreover, this court finds from the record that the Board had logical and rational grounds, based on the evidence, for concluding that the claimant's activities on the morning of November 7, 1984 did not constitute willful misconduct nor was she justifiably discharged for repeated misconduct which would disqualify her for unemployment compensation benefits. Johnson v. Administrator, supra, pp. 267-8.
 Under the Unemployment Compensation Law, Chapter 567, secs. 31-222 et seq., there is created an employment security appeals division consisting of an employment security board of review and employment security appeals referees. Sec. 31-237a. Referees hear de novo appeals from decisions of examiners on applications for benefits. Sec. 31-242. They are not bound by common law and statutory rules of evidence and shall make inquiry, through oral testimony and written records, as will best ascertain the rights of the parties. Sec. 31-244a. From a referee's decision, either party has a right to appeal to a board of review. Sec. 31-249. The Board may determine the case on the record of the hearing before the referee or hear additional testimony.
 Plaintiff contends that under this administrative pattern the determination of the facts is solely within the appeals referee's province and the Board of Review has no power to substitute its judgment on the facts for that of the referee. That contention is mistaken for several reasons.
 First, the referee's factual findings and conclusions only have significance when they are adopted by a board of review. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 4 (1980). An unemployment claim must be determined by both a CT Page 5872 referee and a board of review before it can reach the courts. The court looks to the findings and conclusions of the last tribunal. When reference is made to referee's findings and conclusions, as in Howel v. Administrator, 174 Conn. 529, 533 (1978), it is only because they were approved by the Board of Review.
 Secondly, while it is true the court is bound by a referee's factual findings and conclusions, (which have been accepted by the board of review), Robinson v. Unemployment Security Board of Review, supra. 4, the board of review is not similarly bound by the referee's determinations. Pursuant to sec. 31-249, it hears the case on the record of the hearing before the referee or may hear additional evidence. The statute provides that the board shall state in its decision whether or not it was based on the record of the referee's hearing, and further provides: `In any case in which the board modifies the referee's findings of fact or conclusions of law, the board shall include its findings of fact and conclusions of law.'
 This court interprets that language to mean that the board is not bound by the referee's findings and conclusions but can make an independent determination of facts and the law.
 In this case, the Board initially observed that the referee had invoked a former version of sec. 31-236
(2)(b) which was no longer in force. The Board heard the tape of the referee's hearing. In its decision it recited all the material evidence considered by the referee. But it assessed that evidence differently than the referee and came to a different conclusion on the question of whether or not claimant's action on November 7, 1984 constituted willful misconduct. It was thus performing its statutory function of administrative appellate review and, in so doing, it did not act arbitrarily, unreasonably or in abuse of its discretion.
 "The plaintiff's appeal is overruled and defendant's motion for judgment dismissing the appeal on its merits is granted."
Under Conn. Gen. Stat. sec. 31-326(a)(2)(A), an individual is ineligible for benefits if he leaves work voluntarily without sufficient cause connected with his work. Under 8 Reg. Conn. Agencies sec. 31-236-22(a)(1)(D) (1986), D.O.L., an CT Page 5873 individual has sufficient work-connected cause for leaving if working conditions threatened the individual's health due to his own medical condition. In such a case, under sec. 31-236-22(a)(2), the individual is required to have expressed his dissatisfaction regarding the working condition to his employer and unsuccessfully sought a remedy through those means reasonably available to him before leaving his employment. An individual is required to raise his complaint about the job with his employer before quitting to give his employer an opportunity to remedy the complaint. (See cited Superior Court cases attached to employer's brief.)
The Board in this case expressly found in its decision on claimant's motion to correct the Board's findings that "the claimant never advised the employer of the nature of her illness prior to her resignation, and the employer had no way of knowing the source of the claimant's frequent absences from the medical documentation provided." (See cited Superior Court cases attached to employer's brief.) The correction sought in paragraph (9)(1) of the claimant's motion (to correct) was a deletion of the finding on pg. 3 of the Board's December 9, 1988 decision that "the claimant never advised the employer of the nature of her illness and the employer had no way of knowing the source of the claimant's frequent absences from the medical documentation provided. In this case there was clearly evidence directly supporting the Board's finding as corrected.
In the Board's decision on the motion to correct, it was reasonable that the board find the term "stress" referred to the pressures of office working conditions as opposed to a recognition of claimant's medical condition. The claimant, herself, claimed that the anxiety causing her leaving was unrelated to the stress of office working conditions. The Board's reasonable interpretation of the testimony must be given deference by the court, given the limitation of judicial review in unemployment compensation cases to determining whether the Board acted unreasonably or arbitrarily. United Parcel Service, Inc. v. Administrator, 209 Conn. 381, 385-86, 551 A.2d 724, 727
(1988); Burnham v. Administrator, 184 Conn. 317, 322,439 A.2d 1008, 1010 (1981); Cervantes v. Administrator, 177 Conn. 132,134, 411 A.2d 921, 922 (1979).
A claim of inconsistency of the Board's finding with the referee's findings exceeds the scope of judicial review of the Board's findings. Judicial review of the Board's finding is limited in accordance with the parameters of Conn. Practice Book Sec. 519 which provides as follows:
Sec. 519. — Function of Court CT Page 5874
 (a) Such appeals are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the findings should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusion of the board when these depend upon the weight of the evidence and the credibility of witnesses. In addition to rendering judgment on the appeal, the court may order the board to remand the case to a referee for any further proceedings deemed necessary by the court. The court may remand the case to the board for proceedings de novo, or for further proceedings on the record, or for such limited purposes as the court may prescribe. The court may retain jurisdiction by ordering a return to the court of the proceedings conducted in accordance with the order of the court, or may order final disposition. A party aggrieved by a final disposition made in compliance with an order of the superior court may, by the filing of an appropriate motion, request the court to review the disposition of the case.
 (b) Corrections by the court of the board's finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence.
The Board has the authority to modify the referee's findings of fact under Conn. Gen. Stat. secs. 31-249 and31-249a(b), especially where no inconsistency with the referee's findings is involved. United Parcel Service, Inc.,209 Conn. at 386, 551 A.2d at 727; Middlesex Memorial Hospital v. Administrator, No. 312592, Judicial District of Hartford/New Britain at Hartford, previously set forth in this decision.
The Board's finding that claimant never advised her employer of her illness is dispositive unless the futility of such notification is established. See Auger v. Administrator,19 Conn. Sup. 184, 187, 110 A.2d 645, 647 (1954). Futility was not established.
The Board found, openings were constantly becoming available, regardless of the existence of a vacancy at the precise moment of her resignation. It also found other forms of CT Page 5875 assistance were available such as the Employee Assistance Program, filing a union grievance and meeting with the commanding officer of the labor relations unit, when invited, to discuss her resignation.
The Board's finding itself does not detail the latter forms of assistance. It appears clear, however, from the Board's decision the kinds of assistance referred to. On one point, i.e. claimant's refusal to consider a transfer, the findings of the Board and referee were in fact consistent, giving support to the conclusion that claimant failed to exhaust available alternatives. The Board's finding that positions were frequently available suggests regular availability of openings, an adequate time frame for purposes of a reasonably available remedy.
The Board found, claimant would have left her position even if she had not received the letter delivered by uniformed police officers and her receipt of the letter only helped to finalize her decision. The Board's finding that claimant would have left even if she had not received the (April 25) letter is supported by claimant's direct admission and by understanding of the statement that the letter "just kind of finalized my decision". In any event, even if the letter was a motive for her leaving, as the Board's decision on claimant's motion to reopen points out, claimant was required to raise the matter with her employer and pursue alternatives to leaving. Claimant's reliance on her supervisor's disclosure of confidences as a reason for leaving suffers from the same deficiencies that the Board found her leaving due to illness. In any event, the Board found, she failed to raise the matter with her employer and pursue available alternatives.
Accordingly, because claimant did not advise her employer of her illness before her resignation and reasonable alternatives were available, she left her employment without sufficient work-connected cause under Conn. Gen. Stat. sec. 31-236(a)(2)(A) and is ineligible for benefits.
This court looks to the findings and conclusions of the tribunal. It finds from the record that the Board logically and rationally came to the conclusions it did. The Board did not act arbitrarily, unreasonably nor did it abuse its discretion.
The appeal is dismissed.
LEONARD W. DORSEY SENIOR JUDGE CT Page 5876