[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. STATEMENT OF THE CASE
The present matter involves an appeal from a decision of the Board of Review of the Employment Security Appeals Division. On September 12, 1992, the plaintiff, Thelma L. Forsythe, filed a Notice of Hearing and Unemployment Compensation Claim with the Employment Security Division. The Administrator, pursuant to General Statutes § 31-241, ruled the plaintiff eligible for unemployment benefits for the week ending September 5, 1992, and notified the employer of its chargeability on September 29, 1992.
On October 6, 1992, the employer appealed the Administrator's decision. Appeals Referee Louise L. Cooper ("Referee") conducted a de novo hearing, made findings of fact, and affirmed the Administrator's determination of eligibility by decision issued October 26, 1992. Thereafter, the employer appealed the Referee's decision to the Board of Review ("Board") on November 3, 1992. On March 31, 1994, the Board issued its decision, wherein it modified the Referee's findings of fact and reversed the Referee's decision, thereby sustaining the employer's appeal.
On April 18, 1994, the plaintiff, pursuant to General Statutes § 31-249b, filed an appeal of the Board's decision, denying unemployment compensation benefits, to the Superior Court. Therein, the plaintiff challenges the Board's factual finding that she left suitable work voluntarily and without sufficient cause connected with her work. In response, the defendant Administrator filed a memorandum of law seeking a dismissal of the plaintiff's appeal, on the ground that the plaintiff has misconstrued the scope of review applied by courts in appeals of Board decisions, which does not allow the court to substitute its judgment for that of the Board regarding findings of fact.
II. DISCUSSION
Where, as here, a plaintiff fails to file a motion to correct the findings of the Board in accordance with Practice Book § 515A,[1]
this court's scope of review, in appeals of unemployment compensation decisions, is governed by General Statutes § 31-249b
and Practice Book § 519. General Statutes § 31-249b limits the CT Page 9071 court's ability to correct findings of the Board of Review to those circumstances defined in Practice Book § 519. Practice Book § 519 provides, in pertinent part, as follows:
 (a) Such appeals are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses.
Similarly, the Connecticut Supreme Court recently summarized the applicable standard of review as follows:
 To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry the facts nor hear evidence. If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion.
(Citations omitted.) United Parcel Service, Inc. v. Administrator,209 Conn. 381, 385-86, 551 A.2d 724 (1988).
Moreover, where, as here, the Board's findings and conclusions differ from those of the Referee, this Court need only look to the findings of fact and conclusions of law set forth in the Board's decision. This is true for several reasons:
 "First, the referee's factual findings and conclusions only have significance when they are adopted by a board of review. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 4, 434 A.2d 293 (1980). An CT Page 9072 unemployment claim must be determined by both a referee and a board of review before it can reach the courts. The court looks to the findings and conclusions of the last tribunal. When reference is made to referee's findings and conclusions, as in Howell v. Administrator, 174 Conn. 529, 533, 391 A.2d 165 (1978), it is only because they were approved by the Board of Review.
 Secondly, while it is true that the court is bound by a referee's factual findings and conclusions, (which have been accepted by the board of review), Robinson v. Unemployment Security Board of Review, supra, 181 Conn. 4, the board of review is not similarly bound by the referee's determinations. Pursuant to [General Statutes] § 31-249, it hears the case on the record of the hearing before the referee or may hear additional evidence. The statute provides that the board shall state in its decision whether or not it was based on the record of the referee's hearing, and further provides: "In any case in which the board modifies the referee's findings of fact or conclusions of law, the board shall include its findings of fact and conclusions of law."
 This court interprets that language to mean that the board is not bound by the referee's findings and conclusions but can make an independent determination of facts and the law.
Cibula v. Administrator, 6 CSCR 759, 760-61 (July 12, 1991, Dorsey, J.), quoting Middlesex Memorial Hospital v. Administrator, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 312592 (June 27, 1986, Satter, J.).
In the present case, the Board conducted an independent review of the record, including the tape recording of the Referee's hearing, pursuant to General Statutes § 31-249, prior to issuing its decision. Therein, the Board recited all the material evidence considered by the Referee. However, the Board assessed that evidence differently than the Referee, and came to a different conclusion regarding the issue of whether the plaintiff voluntarily quit her employment with sufficient job-connected cause, under General Statutes § 31-236 (a)(2)(A). In so doing, the Board was properly performing its statutory function of administrative appellate review. Accordingly, in resolving the appeal currently before the court, the court looks to, and applies the appropriate CT Page 9073 standard of review to, only the Board's Decision.
General Statutes § 31-236 (a) provides, in pertinent part, that:
 [a]n individual shall be ineligible for [unemployment compensation] benefits . . . (2)(A) if, in the opinion of the administrator, [s]he has left suitable work voluntarily and without sufficient cause connected with h[er] work . . . .
Thus, where it is determined that a claimant has left suitable work voluntarily and without sufficient job-connected cause, she will be deemed ineligible for benefits. Id.
In order to establish sufficient or good cause under §31-236 (a)(2)(A), a claimant must show both: (1) that she left employment for reasons which would impel the ordinary prudent person to leave; and (2) that there was no reasonable alternative available to her but to terminate that employment. Pereira v.Administrator, 6 Conn. App. 658, 660-61, 506 A.2d 1087, cert. denied, 200 Conn. 803 (1986); Valley Surgical Group, P.C. v.Administrator, 6 Conn. App. 588, 590-91, 506 A.2d 1075 (1986). The burden is on the claimant to prove both that she had sufficient cause for leaving her employment; see Robinson v. UnemploymentSecurity Board of Review, supra, 181 Conn. 23; Northup v.Administrator, 148 Conn. 475, 480, 172 A.2d 390 (1961); and that no reasonable alternative to quitting said employment existed.Pereira v. Administrator, supra, 6 Conn. App. 661; Valley SurgicalGroup, P.C. v. Administrator, supra, 6 Conn. App. 591.
Courts have applied a reasonable person standard to the first inquiry, requiring the claimant to prove that her reasons for leaving were such as would impel an ordinarily prudent person to leave employment. Robinson v. Unemployment Security Board ofReview, supra, 181 Conn. 22-23; Pereira v. Administrator, supra,6 Conn. App. 660; Bolden v. Administrator, 40 Conn. Sup. 208, 211
(1984). Further, insofar as the second inquiry is concerned, courts have refused to speculate as to whether there were other options or alternatives available to the claimant, because the burden rests with the claimant to prove that no such reasonable alternative existed. Valley Surgical Group P.C. v. Administrator,
supra, 6 Conn. App. 590-91 (in addition to the existence of factors that might impel the ordinary prudent person to leave employment, there must be a showing by the claimant that she had no reasonable alternative but to terminate her employment). CT Page 9074
In the present case, the record before the court establishes the following relevant facts. On March 30, 1992, the employer hired the plaintiff as a full-time Dental Hygienist. The plaintiff was scheduled for a vacation from July 23 to August 16, 199[2].[2]
Decision of Board of Review, dated March 31, 1994, at 3.
Dr. Feldberg, one of the dentists in the employer's practice, generally authorized newly assigned patients for dental hygiene care. Id., at 2. On July 23, 1992, the employer's receptionist, Dr. Oppenheimer (another dentist in the employer's practice), a thirteen-year old boy, his eighteen-year old brother, and the plaintiff, were together at the front desk. Id. The older boy was a patient of Dr. Oppenheimer's, and the plaintiff had just finished cleaning his teeth. Id. The receptionist advised the plaintiff that the thirteen-year old had just been placed on her schedule for dental hygiene as well. Id.
The plaintiff was confused because no parent was present, and asked the receptionist who had approved the boy as her patient. Id. The receptionist did not answer. Id. The plaintiff asked for evidence of a parental signature approving treatment and a medical history. Id. The receptionist did not produce those items. Id. Dr. Oppenheimer did not intervene, and instead walked out of the reception area. Id.
Concerned about the legality of treating the minor child without the proper documentation, the plaintiff asked the child questions about his medical history. Id. The boy and his brother seemed confused, but they did indicate that the child had a device in the Eustachian tube of one of his ears due to a crushed eardrum he had sustained in a light aircraft accident. Id.
The plaintiff advised the younger boy to reschedule his appointment, and return with a parent. Id., at 2-3. After the child left the office, the receptionist confirmed that Dr. Feldberg had authorized the child for treatment by the plaintiff. Id., at 3. Additionally, Dr. Feldberg met with the plaintiff, Dr. Oppenheimer and Robert Feury, Office Director. Id. In a stern voice, Dr. Feldberg reprimanded the plaintiff for dismissing the child on her own authority, and directed her to follow the employer/s policy, whereby she check with him when she has a concern about the propriety of treating a patient. Id.
The plaintiff was upset with Dr. Feldberg's manner, and CT Page 9075 assumed that he was directing her to treat all patients on demand, without question of propriety. Id. Consequently, during her vacation, the plaintiff contacted the Attorney General's office, whereby she confirmed her belief that it is improper to provide dental services to a minor without parental consent and signature. Id. On August 12, 199[2],[3] the plaintiff resigned her position because she was concerned that the employer might expect her to perform an illegal act. Id.
Based upon these facts, which the Board derived from its independent review of the record, the Board concluded that the plaintiff did not have sufficient job-connected cause, under General Statutes § 31-236 (a)(2)(A), for voluntarily quitting her employment. Id., at 3-5. In reaching this conclusion, the Board specifically found that there was no evidence in the record that the employer had been engaging in illegal activity. Id., at 4. Additionally, the Board found that, although it is true that dental treatment cannot be legally provided to a minor without parental consent, and the receptionist did not show a parental signature to the plaintiff, the existing evidence suggests that the parents of the thirteen-year old boy had approved his treatment. Id. In this regard, the Board noted that Dr. Feldberg had authorized his assignment to the plaintiff for dental hygiene, the boy had come into the office with his older brother for treatment, and the employer credibly testified that the parents were upset when the younger boy returned home without having his teeth cleaned. Id.
Further, the Board found credible the employer's testimony that Dr. Feldberg explained to the plaintiff that on occasions when she was concerned about providing treatment for a patient, she should clarify the situation with him. Id. In this regard, the Board found that, had the plaintiff questioned Dr. Feldberg before dismissing the minor patient on July 23, 1992, he would likely have been able to allay the plaintiff's concerns and confirm the propriety of the assignment. Id. Finally, the Board found noteworthy the fact that the plaintiff did not seek to clarify her employer's position, or explore alternatives that might have preserved the employer relationship, prior to resigning from her employment. Id.
The Board also concluded that Dr. Feldberg's criticism of the plaintiff provided insufficient job-connected cause for her decision to leave her employment. Id., at 3-5. In this regard, the Board noted that, although the employer conceded that Dr. Feldberg was angry with the plaintiff and used a stern voice when CT Page 9076 he admonished her for dismissing the child without providing treatment, the plaintiff conceded that, after the child left, she realized that there were better methods at her disposal to handle the situation. Id., at 3. Additionally, the Board found that the plaintiff had failed to demonstrate on the record that Dr. Feldberg's criticism was particularly maligning. Id. In this regard, the Board noted that, while Dr. Feldberg's tone may have been unpleasant when he reminded the plaintiff that she did not have initials after her name and was not authorized to make final decisions on patient care, it could not characterize his statement as venomous. Id., at 3-4. Finally, the Board found that the record failed to establish that Dr. Feldberg was stern with the plaintiff on any occasion prior to July 23, 1992. Id., at 4. For all of these reasons, the Board concluded that Dr. Feldberg's single expression of anger provided the plaintiff with insufficient job-connected cause to quit her job. Id.
Applying the applicable standard of review to the within matter, this court concludes that the Board's findings of fact have ample support in the record, and that a review of the record does not support the conclusion that the Board acted unreasonably, arbitrarily or illegally. The record before the court establishes that the plaintiff's belief, that her employer would require her to perform illegal acts in the future, and the plaintiff's distress, at the demeanor her boss used in reprimanding her, would not compel an ordinary prudent person to leave her employment. Further, the record before the court establishes that the plaintiff failed to determine whether there were reasonable alternatives available to her, other than quitting her job, prior to resigning from her employment. Accordingly, this court finds that the Board's conclusion, that the plaintiff was disqualified from receiving benefits because she "left suitable work voluntarily and without sufficient cause connected with [her] work," within the meaning of General Statutes § 31-236(a)(2)(A), was reasonable and logical.
III. CONCLUSION
In her appeal, the plaintiff challenges only the factual determinations reached by the Board, which this court is now powerless to alter. See Practice Book § 515A. See also Wills v.Administrator, Superior Court, judicial district of Middlesex, Docket No. 69802 (March 10, 1995, Aurigemma, J.) (in the absence of a motion to correct pursuant to Practice Book § 515A, the court's scope of review is limited, under Practice Book § 519(a), to a determination of whether there is any evidence to support the CT Page 9077 conclusions reached by the Board).
Moreover, the Board's decision represents a correct application of the law to the facts found, and could reasonably follow from such findings.
Accordingly, the plaintiff's appeal must be, and is, hereby dismissed.
BY THE COURT,
STANLEY, J.